IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : CRIMINAL CASE NUMBER: |
| v. | : 1:15-CR-372-AT-JSA |
| | : |
| LOUIS ANDRESEN. | : |

## REPORT AND RECOMMENDATION

Defendant seeks to suppress a gun, ammunition, and other evidence obtained by Brookhaven Police Department officers as the result of an investigative stop on November 4, 2015. The Court, however, finds that the investigating officers possessed the requisite reasonable suspicion to justify the stop, and therefore **RECOMMENDS** that Defendant's Motion to Suppress [11] be **DENIED**.

## FACTS

Brookhaven Police Officer Garvin LaCroix was on duty on the night of October 14, 2014, when he was flagged down by an individual named Trey Staines. Transcript of Evidentiary Hearing, December 28, 2015, [15] ("Tr.") at 4. Staines told Officer LaCriox that a gunman held him up and stole his car two days earlier. *Id.* at 5. Staines claimed that he knew where the car was located, because a friend was somehow currently engaged in a Facebook conversation with the robber. *Id.* at 5-6. According to Staines, the robber told the friend that he (the

robber) and the car was in the parking lot of a specific apartment complex, that his (the robber's) name was Louis, and that he (the robber) was a Hispanic male with a shaved head, was wearing a white shirt and had a tattoo. *Id.* at 6-7, 29.[1] The record includes no indication that Officer LaCroix inquired as to how the "friend" became involved in a Facebook conversation with the robber or as to why the robber was sharing all of this information with the friend. *Id.* at 25-26.

Staines described his stolen car, including as to the tag number. *Id.* 6-8. He explained that the car was a 1994 red Toyota with fading paint, and that the car was currently parked at the back of the garage of the complex. *Id.* at 6. Officer LaCroix confirmed via radio that the car had in fact been reported as stolen. *Id.* at 6-8. Officer LaCroix then drove to the apartment complex. *Id.* at 8-9.

When he arrived, Officer LaCroix found the car at the back of the garage as Staines had described. *Id.* at 13, 18-19, 32-22. Officer LaCroix could not see the tag, because the car was backed into the spot, but otherwise saw a car matching the description with a man sitting in the driver's seat with a shaven head and white

---

[1] It is unclear from Officer LaCroix's testimony whether Staines was supplying his own physical description of the robber based on his own personal encounter with him two days earlier, or rather was relaying what the robber was somehow telling the "friend" via Facebook. Officer LaCroix's testimony implies the latter, as he concluded the summary of the description with the phrase, "I guess that's what he [presumably referring to the robber] was telling the girl on Facebook." Tr. at 7. This does not make much sense, but because the Government did not establish otherwise, and bears the burden of proof, the Court will assume that Staines was not relaying his own personal description of the robber.

shirt.  *Id*.  Officer LaCroix approached the car.  *Id.* at 13-14.  Because Staines had warned him that the robber had used a gun, Officer LaCroix drew his sidearm and ordered the Defendant to put his hands up as he saw Defendant open the door.  *Id.* at 13-14, 16.  As the Defendant left the car with his hands up, Officer LaCroix heard a loud noise that sounded like metal hitting the ground, and he subsequently found a handgun on the ground at that spot.  *Id.* at 14-18.

## DISCUSSION

Officer LaCroix seized Defendant without a warrant and apparently discovered evidence–the handgun–as a result.  The government must prove the lawfulness of such a warrantless seizure, by demonstrating that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the Fourth Amendment.  *United States v. Friere*, 710 F.2d 1515 (11th Cir. 1983).

A so-called "*Terry* stop" is one such narrow exception. *See Terry v. Ohio,* 392 U.S. 1 (1968); *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000).  Under *Terry*, police officers may make an investigative stop if the circumstances are sufficient to enable them reasonably to suspect that an individual is engaged in criminal activity.  *Terry*, 392 U.S. at 21.  Probable cause is not required to justify an investigative stop; reasonable suspicion is sufficient.  *United States v. Powell*, 222 F.3d 913, 917-8 (11th Cir. 2000); *United States v. Mikell*, 102 F.3d 470, 474-5

(11th Cir. 1996).  To make a showing that in fact the officers had reasonable suspicion, they "must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch" of criminal activity.'"  *Illinois v. Wardlow,* 528 U.S. 119, 123-4 (2000) (quoting *Terry,* 392 U.S. at 27).

Defendant argues that Officer LaCroix lacked reasonable suspicion to believe that Defendant had committed a crime.  Defendant argues that the information provided to Officer LaCroix was akin to an anonymous tip, in the sense that Mr. Staines attributed most of the specific information about the whereabouts and description of the suspect to his unidentified friend.  According to Defendant this information was not sufficiently reliable to form reasonable suspicion.

Defendant cites to *Alabama v. White*, 496 U.S. 325 (1990), one of the leading Supreme Court cases on the reliability of anonymous tipster information.  In that case, police received an anonymous tip that an individual would be leaving a specific apartment at a specific time in a specific car, and would be transporting drugs to a hotel.  The officers conducted surveillance, saw the Defendant leave his apartment at the appointed time, get in a car that had been described, and drive towards the motel.  The police pulled him over and discovered drugs in the car before he reached the motel itself.  The Court found that the officer possessed reasonable suspicion because, despite the anonymous nature of the tip, the officers'

surveillance corroborated enough key details to suggest the accuracy of the information. *Id.* at 332. Defendant argues that Officer LaCroix here had not corroborated any such details and that Staines' second-hand description of Facebook conversations between the Defendant and Staines' unidentified friend did not give rise to reasonable suspicion.

To be sure, the information from Staines was confusing. Carjackers do not usually chat on Facebook with "friends" of their victims several days later, and it was confusing to the Court how this conversation came to be. Obviously, there was something more to this story and perhaps some unexplained connection between the parties. Nevertheless, this case was not the result of an "anonymous" tip as that phrase is typically used in cases such as *White*. Officer LaCroix was flagged down by a specific, identifiable person–Staines–who claimed to be the first hand victim of a carjacking just two days before. Staines was "upset," and Officer LaCroix confirmed that the car had been reported stolen just as Staines alleged. *See* Tr. at 6. Staines specifically described his car. All of these facts lent some objective credibility to the information.

While the other information about the immediate location of the car and perhaps the current description and name of the person inside came from the "friend," that person was also not entirely anonymous. Of course, Staines did not name that person or explain her relationship with the carjacker. But Staines made

clear the basis of the person's knowledge, that is, that the person was directly communicating with the carjacker at that moment on Facebook.  The person also shared some very precise details about the location of the car, and the description of the carjacker/driver. And while the person's specific identity was unknown, Staines had told Officer LaCroix that the person was his "friend."  Presumably, it was foreseeable to the "friend" and to Staines that the person's identity might be revealed at some point to police, or at least that investigators might ask to speak with the friend.  This alone distinguishes the purely "anonymous" tip, which involves no level of accountability to investigators.

A reasonable investigator may very well have asked more questions at this point, especially if he or she had the benefit of time.  But Officer LaCroix was faced with an emergent situation–a report of an armed carjacker sitting behind the wheel of a stolen car and able to drive away at a moment's notice.  The Court cannot find that Officer LaCroix was required under the Fourth Amendment to further interrogate Staines and the "friend" further before heading to the garage and surveilling the scene.

With the information from the friend and from Staines, Officer LaCroix then found a car matching the description, with a person sitting inside matching the description given to him of the carjacker, located in the area of the garage where the car was reported to be.  While Officer LaCroix could not see the tag, the car

had otherwise been described with some specificity.  Staines identified the stolen car as red, beat-up, model year 1994 Toyota.  As well made as Toyotas may be, the substantially advanced age of this car combined with the color and other descriptors was sufficient to give Officer LaCroix specific and articulable grounds to investigate.  Indeed, even putting aside the information from the "friend," Officer LaCroix was entitled to investigate whether this might be the same car as was reported stolen.  The Court therefore **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED**.

With no other pretrial matters before the undersigned, this case is hereby **READY FOR TRIAL**.

**IT IS SO RECOMMENDED** this 16th day of March, 2016

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE